**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No.  3:16cr90 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| CHARLES MUSTO, | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

In the instant criminal matter, the United States of America (hereinafter "the government") charges Defendant Charles Musto (hereinafter "defendant") with crimes arising from the filing of a joint federal income tax return for the calendar years 2009 and 2010.  Before the court for disposition are the defendant's motions to dismiss the superseding indictment (Doc. 44) and to suppress evidence (Doc. 16).  For the reasons explained below, we will deny both motions.

**Background**

A Grand Jury in the Middle District of Pennsylvania indicted the defendant on April 12, 2016.  (Doc. 1, Indictment).  The one-count indictment charged the defendant with filing a false tax return for the calendar year 2009 in contravention of 26 U.S.C. § 7206(1).

On April 28, 2016, the government executed five (5) search warrants at three (3) locations and seized approximately twenty (20) boxes of paper records and eleven (11) electronic hard drives. (Docs. 16-6 to 16-10, Exs.

D-1 to D-5, Search and Seizure Warrants dated 4/27/16; Doc. 16-12, Ex. F, Search Warrant Items to be Seized).  Subsequent to the search and seizure of defendant's property, the Grand Jury returned a superseding indictment adding two additional charges.  Count II charges the defendant with filing a false tax return for the calendar year 2010, in violation of 26 U.S.C. § 7206(1).  Count III charges the defendant with tax obstruction in contravention of 26 U.S.C. § 7212(a).

On June 17, 2016, the defendant filed a motion to suppress all evidence directly and derivatively obtained by the government arising from the government's execution of five (5) search warrants on April 28, 2016. (Doc. 16).  Additionally, on October 11, 2016, the defendant filed a motion to dismiss the superseding indictment.  (Doc. 44).  The court held an evidentiary hearing addressing these motions on January 9, 2017.  (Doc. 57, 58).  At the conclusion of the evidentiary hearing, the court directed the parties to submit post hearing briefs with citations to the record.  (Doc. 59, 60).  Having received the parties post-hearing submissions, the matter is ripe for disposition.

**Discussion**

The defendant moves to dismiss the superseding indictment,

asserting that the government's investigation and prosecution of this matter eviscerated his constitutionally protected due process rights under the Fifth Amendment[1] and Sixth Amendment right to counsel.[2]  Alternatively, the defendant moves to suppress all evidence arising from the government's execution of five (5) search warrants on April 28, 2016, arguing the government lacked probable cause to obtain these search warrants.  The court will address these motions *in seriatim*.

**Motion to Dismiss**

The defendant first seeks to dismiss the superseding indictment pursuant to the Fifth Amendment's Due Process Clause and Sixth Amendment's right to counsel.[3]  To warrant the extreme sanction of dismissal of the indictment under the Fifth and Sixth Amendments, the defendant must demonstrate that the government's misconduct caused the

---

[1]  The Fifth Amendment provides, in part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."

[2]  The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel.  United States v. Morrison, 449 U.S. 361, 364 (1981).

[3]  The defendant also seeks dismissal under the Fourth Amendment, arguing the government unreasonably seized a notebook from the defendant's residence on April 28, 2016.  As discussed in detail throughout this memorandum, we conclude the government' temporary seizure of this notebook fails to justify dismissing the superseding indictment.

defendant to suffer substantial prejudice.  See United States v. Voigt, 89

F.3d 1050, 1064, 1067 (3d Cir. 1996) (stating that to offend due process

under the Fifth Amendment, the government's misconduct must shock the

universal sense of justice, and the defendant must establish actual and

substantial prejudice); United States v. Morrison, 449 U.S. 361, 364 (1981)

(holding that the defendant must demonstrate prejudice, or a substantial

threat thereof, to obtain dismissal under the Sixth Amendment).

In the instant matter, the defendant alleges that the government's

conduct during and after the execution of five (5) search warrants on April

28, 2016 demonstrates substantial prejudice.  As previously stated, on

April 28, 2016, the government executed five (5) search warrants at three

buildings: (1) defendant's personal residence; (2) defendant's periodontal

office; and (3) a building associated with defendant's real estate entities.

(N.T. at 50-51, 57-58; Docs. 16-6, 16-7, 16-8, 16-9, and 16-10).

While searching defendant's house, Special Agent Marita Gehan

(hereinafter "SA Gehan") located a notebook.  (N.T. at 114).  The notebook

had the phrase "attorney-client privilege" marked on the front cover.  (N.T.

at 114).  SA Gehan briefly reviewed the notebook and determined the

notebook may contain privileged materials.  (N.T. at 114-15).  As such, SA

4

Gehan segregated the notebook from other seized materials.  (N.T. at 114-15).

Subsequent to SA Gehan segregating the notebook, Supervisory Special Agent Ben Wylam (hereinafter "SSA Wylam") arrived at her search area.  (N.T. at 114-15; 148-49).  SA Gehan advised SSA Wylam she had located a notebook.  (N.T. at 116).  SSA Wylam located the notebook and flipped through the notebook's contents.  (N.T. at 149).  Prior to discussing whether to seize the notebook with SA Gehan, SSA Wylam ensured no other agents were located in their vicinity, including the lead investigating case agent–Special Agent Maria Grabinski (hereinafter "SA Grabinski").[4] (N.T. at 159).

SSA Wylam next advised SA Gehan not to discuss the notebook with other agents or prosecutors.  (N.T. at 149).  Specifically, SSA Wylam stated that:

> if she believed [the notebook] should be seized, seize it. Place it in an envelope and have the evidence envelope sealed, to indicate on the outside of the evidence envelope the notebook with the annotation of attorney-client privilege and make sure that it is annotated on the inventory records so it kind of puts a spotlight on it.  My conversation to her was, you can't really unsee what you already have seen.

---

[4]  In fact, SA Grabinski did not become aware of the notebook's existence until the following day.  (N.T. at 79).

(N.T. at 149).  Finally, SSA Wylam reiterated to SA Gehan not to discuss

anything with any other special agent or the prosecuting attorneys.  (N.T.

at 149).

     Soon thereafter, SA Gehan placed the notebook into an evidence

envelope and appropriately labeled the envelope attorney-client privilege.

(N.T. at 116).  SSA Wylam removed the envelope from defendant's home

and transported it to the federal building in Scranton.  (N.T. at 151).  The

lead case agent, SA Grabinski, did not travel back to Scranton with SSA

Wylam.  (N.T. at 162-63).  Rather, SSA Wylam traveled alone from the

defendant's residence in Forty Fort to Scranton.  (N.T. at 163).

     Subsequent to arriving at the federal building in Scranton,

SSA Wylam immediately delivered the notebook to the filter attorney,

AUSA Fran Sempa.[5]  (N.T. at 153).  AUSA Sempa reviewed the

notebook's contents.  (N.T. at 153).  Shortly thereafter, AUSA Sempa

determined the notebook contained protected attorney-client materials, and

---

    [5]  Prior to executing the five search warrants on April 28, 2016, the
government organized a filter team, also known as the taint team.  (N.T. at
52-55).  The filter team examined seized evidence to determine whether
any of the seized materials were potentially privileged.  (N.T. at 154).  If the
filter attorney determined the seized materials were privileged, these
materials were returned to defense counsel, without the prosecution team
ever reviewing them.  (N.T. at 154-55).

he returned the notebook to defense counsel the very next day.  (N.T. at 153).

Confronted with this undisputed evidence, the defendant first contends that the government's outright seizure of his attorney-client notebook demonstrates substantial prejudice.  Specifically, the defendant argues that the government's seizure of this notebook violated the government's search protocol pertaining to the handling of potentially privileged information.  We disagree.

Pursuant to the search protocol, the government  created a filter team, or taint team, comprised of an Assistant United States Attorney and other agents.  (N.T. at 52-55).  The taint team reviewed all potentially privileged materials seized on April 28, 2016.  (N.T. at 154).  If the filter attorney determined the seized materials were privileged, these materials were returned to defense counsel, without the prosecution team ever reviewing them.  (N.T. at 154-55).

Here, the government's temporary seizure of the defendant's notebook fails to demonstrate substantial prejudice.  Initially, SA Gehan appropriately seized the defendant's notebook to ensure the defendant had not concealed any relevant information under the guise of an attorney-

7

client notebook.  Also, prior to SA Gehan and SSA Wylam discussing the

notebook at the defendant's residence, SSA Wylam ensured no

government agents were present, including the lead case agent SA

Grabinski.  SSA Wylam also repeatedly advised SA Gehan not to discuss

the notebook with other agents or the prosecuting attorneys.  Finally, SSA

Wylam immediately delivered the notebook to the filter attorney for review.

Thus, the government's temporary seizure of this notebook fails to

demonstrate substantial prejudice.

The defendant next argues that SSA Wylam's decision on April 28,

2016, to flip through defendant's notebook immediately after receiving it

from SA Gehan caused substantial prejudice.[6]  The undisputed hearing

evidence, however, demonstrates that the instant SSA Wylam flipped

---

[6]  The defendant specifically avers that SSA Wylam's decision, as a
member of the prosecution team, to:

> immediately read communications between [the defednant] and
> his attorneys regarding his defense strategy, which
> communications were clearly marked and, therefore, known to be
> protected by the attorney-client privilege, the government has
> eviscerated the protections of the attorney-client privilege, and
> has thus violated [the defendant's] Sixth Amendment Rights.
> Quite simply, the protections of the attorney-client privilege and
> Sixth Amendment were rendered utterly meaningless by the
> government's misconduct.

(Doc. 62, Def.'s Post-Hr'g Br. at 12).

8

through the notebook, he immediately transferred from the prosecution team to the filter team, and he ceased all communication with SA Grabinski and the prosecuting attorneys regarding defendant's criminal prosecution.

Prior to the execution of the search warrants, SSA Wylam did indeed assist the prosecution team and had a limited supervisory role in defendant's investigation.  (N.T. at 56, 138-49).  Specifically, SSA Wylam reviewed the case three times a year with SA Grabinski, assisted SA Grabinski with interviews, and reviewed the affidavit of probable cause.[7] (Doc. 59, Notes of Testimony dated 1/9/17 (hereinafter "N.T.") 1/9/17 at 139-40).

On April 28, 2016, SSA Wylam's role in the criminal prosecution changed.  Within seconds of reviewing the notebook's contents, SSA Wylam understood that he could no longer participate in the investigation.  (N.T. at 160-61).  Instead, SSA Wylam walled himself off from the

---

[7]  At the hearing, the defendant failed to establish that SSA Wylam directed the investigation, decided who to interview, or prepared the search warrant affidavit.  Rather, the hearing testimony unequivocally established that SSA Wylam played a limited supervisory role in defendant's investigation.  (N.T. at 139-40).

9

investigation, and became a member of the filter team.[8]  (N.T. at 162).

Regarding SSA Wylam's transition from the prosecution team to the

filter team, the undisputed testimony states as follows:

> Q: Was this originally the plan for you to assist in the
> filter review?
> A: We were going to have two agents review it,
> which were Dunstone and Ross, and they would supply
> the documents to AUSA Sempa.  Because I had looked at
> that notebook, I had to remove myself from that, and then I
> ended up becoming part of the taint team.  That would
> have been literally within seconds of when I saw it.
> Q.  So it's fair to say that from that point on, you
> essentially became a part of the filter team and were no
> longer, if ever, a part of the investigation team?
> A.  Correct.
> Q.  Have you disclosed the substance or specific
> communications of any privileged materials that might
> have been found within the paper documents that you
> reviewed?
> A.  To whom?
> Q.  Have you disclosed - -
> A.  Fran Sempa, I have.
> Q.  Other than to Mr. Sempa?
> A.  No.
> Q.  And specifically to either any member of the
> prosecution team, myself or Mr. Guappone or special
> Agent Grabinski?
> A.  There's been no disclosure discussion with any

---

[8]  The undisputed hearing testimony confirms the fact that since April 28, 2016 when SSA Wylam flipped through defendant's notebook, he has no longer been a member of the prosecution team.  (N.T. at 80-81, 162).  Rather, SSA Wylam has only been a member of the filter team and has had no communications with SA Grabinski or the prosecuting attorneys regarding defendant's criminal prosecution.  (N.T. at 161-62).

10

materials other than between myself and Fran Sempa.
    Q.  And you said that you did assist in the filter
review of certain electronic evidence that was seized?
    A.  Correct.
    Q.  And have you disclosed to the prosecution team
the substance or content of any potentially - - or of any of
the materials within the electronic evidence that was
seized?
    A.  No.  There has been no disclosure of anything.
    Q.  Since the date of the search, have you
participated or assisted in the investigation or prosecution
of the Defendant Charles Musto?
    A.  No.
    Q.  Since the date of the search, has your role - -
what has your role been in this matter?
    A.  I've basically been on a taint team.
(N.T. at 161-62).[9]

In short, the undisputed hearing testimony confirms the fact that

since April 28, 2016, when SSA Wylam flipped through defendant's

notebook, he has no longer been a member of the prosecution team.  (N.T.

at 80-81, 162).  Rather, SSA Wylam has only been a member of the filter

team and has had no communications with SA Grabinski or the

prosecuting attorneys regarding defendant's criminal prosecution.  (N.T. at

161-62).

Stated differently, the defendant failed to demonstrate <u>how</u> the fact

that SSA Wylam flipped through the notebook prejudiced the defendant's

_____

    [9] The questions, "Q", were asked by defense counsel and the
answers, "A" ,were provided SSA Wylam.

11

criminal case.  The defendant failed to demonstrate that SSA Wylam

discussed the notebook with any member of the prosecution team.  The

defendant failed to establish that SSA Wylam took pictures or photocopied

the notebook prior to delivering the notebook to AUSA Sempa and

transferred these pictures or copies to any member of the prosecution

team.  In short, the defendant does not cite even a single occasion on

which SSA Wylam provided any information to SA Grabinski or the

prosecutors to benefit the government's case.  As such, the defendant

failed to demonstrate that SSA Wylam's decision to flip through the

notebook substantially prejudiced the defendant.

    In sum, based on present record before the court, the defendant has

failed to establish any prejudice, justifying the dismissal of the superseding

indictment.  Ergo, the court will deny the defendant's motion to dismiss the

superseding indictment.

**Motion to Suppress**

    Having determined that dismissal of the superseding indictment is

not appropriate, the defendant next argues the Fourth Amendment

requires the suppression of the evidence seized pursuant to the five (5)

April 28, 2016 search warrants.  The Fourth Amendment to the United

States Constitution prohibits unreasonable search and seizures.  U.S. CONST. AMEND. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]").  Generally, for a search or seizure to be reasonable, it needs to be performed pursuant to a warrant or an exception to the warrant requirement must be present.

In the instant matter, the government obtained valid search warrants to seize defendant's property on April 28, 2016.  (Docs. 16-6 to 16-10, Exs. D-1 to D-5, Search and Seizure Warrants dated 4/27/16).  The defendant, however, seeks to challenge the validity of these search warrants, asserting the search warrant affidavit lacked probable cause.  Specifically, the defendant argues the search warrant affidavit contained material misrepresentation and omissions rendering the search warrants defective. Thus, according to the defendant, the court must suppress all evidence obtained by the government on April 28, 2016.

The government counters that the search warrant affidavit did not contain any material omissions or misrepresentations.  Moreover, the defendant failed to challenge the majority of the search warrant affidavit detailing the defendant's accounting practices, which provide the basis for

13

the underlying charges.  In short, the government argues that, viewing the totality of the allegations stated within the search warrant affidavit, the affidavit established probable cause that contraband or evidence of a crime would be found in a particular place.  After a careful review, we agree with the government.

The Supreme Court has determined that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the *ex parte* issuance of the warrant.  United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006) (citing Franks v. Del., 438 U.S. 154, 155-56 (1978)).  The Court created a mechanism to allow a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid.  First, the defendant must make a "substantial preliminary showing" that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause.  Franks, 438 U.S. at 171.

If the defendant satisfies this preliminary showing, the court conducts an evidentiary hearing.[10]  At the hearing, the defendant must ultimately

---

[10]   In the instant matter, to afford the defendant every constitutional protection, the court held an evidentiary hearing on January 9, 2017.

14

prove by a preponderance of the evidence that: (1) that the affiant

knowingly and deliberately, or with a reckless disregard for the truth, made

false statements or omissions that create a falsehood in applying for a

warrant; and (2) that such statements or omissions were material, or

necessary, to the probable cause determination.  Sherwood v. Mulvihill,

113 F.3d 396, 399 (3d Cir. 1997) (citing Franks, 438 U.S. at 171-72).

The defendant provides one potentially cogent argument regarding

an omission from the search warrant affidavit of probable cause arising

from the government's interviews of the defendant's bookkeeper, Donna

Kon (hereinafter "Kon").[11]  The government interviewed Kon in 2014 and

2016.  According to the defendant, Kon's 2014 statement conflicted with

her 2016 statement.  The government, however, omitted any mention of

Kon's 2014 interview from the affidavit of probable cause.  Thus, the

search warrant affidavit lacked probable cause.  We disagree.

The Supreme Court of the United States has held that a magistrate

_____

(Docs. 57, 58).

[11]  As an example of a less cogent argument requiring suppression of
evidence, the defendant asserts that the search warrant affidavit of
probable cause misrepresented that the defendant and his wife possess
"accounts in foreign countries."  The uncontroverted hearing testimony,
however, demonstrates that the defendants do indeed maintain
investments in foreign countries.  (N.T. at 49-50).

15

judge may find probable cause when, viewing the totality of the

circumstances, "there is a fair probability that contraband or evidence of a

crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213,

238 (1983).   The Third Circuit Court of Appeals has explained that a

district court reviewing a magistrate judge's probable cause determination

must apply a highly deferential standard of review.  United States v. Jones,

994 F.2d 1051 (3d Cir. 1993).  Specifically, we determine whether a

substantial basis existed for the magistrate judge to conclude that a fair

probability of the sought-after evidence would be found.  United States v.

Ritter, 416 F.3d 256, 263 (3d Cir. 2005) (citing United States v. Conley, 4

F.2d 1200, 1205 (3d Cir.1993)).

Furthermore, the Third Circuit has indicated that a reviewing court

"need not determine whether probable cause actually existed, but only

whether there was 'a substantial basis for finding probable cause.'" United

States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting Jones, 994

F.2d at 1054).  "Probable cause can be, and often is, inferred by

considering the type of crime, the nature of the items sought, the suspect's

opportunity for concealment and normal inferences about where a criminal

might hide the fruits of his crime.  Id. (citation and internal quotation marks

16

omitted).  Moreover, a court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."  Id. at 305-06 (citations omitted).

The uncontroverted hearing testimony established that the government interviewed Kon in 2014 and 2016.[12]  (N.T. at 20, 24, 26).  The government interviewed Kon for two hours in 2014 and two to three hours in 2016.  (N.T. at 65).  In 2014, Kon stated that she was not aware of any inconsistencies with income and expenses of the defendant's dental practice.  In 2016, however, Kon testified that she "buried" various personal expenses.  (N.T. at 93-94).  Specifically, the defendant would incur a personal expense and instruct Kon to enter the personal expense as a business expense of either the defendant's dental practice or rental properties.  (N.T. at 93-94, 100-03).

Regarding the differences between her 2014 and 2016 statements, Kon testified that during her 2014 interview, she received a telephone call from her husband and defendant's counsel.  (N.T. at 65).  Subsequent to speaking with her husband and defendant's attorney, Kon stopped

---

[12]  Kon worked for the defendant for over twenty years, including at the time the government interviewed her in 2014 and 2016.  (N.T. at 68-69).

17

answering the government's questions and stated that she, Kon, needed to leave.  (N.T. at 66).  Kon also testified that she did not tell SA Grabinski everything she knew about the defendants bookkeeping practices in 2014.  (N.T. at 105).  Rather, Kon limited her answers to protect the defendant and not "say anything that was going to cause him any harm."  (N.T. at 106).  Thus, the government's decision to omit Kon's 2014 interview from the search warrant affidavit of probable cause was not material to the magistrate judge's finding of probable cause.

Moreover, even if the search warrant affidavit included Kon's 2014 interview, we would still determine probable cause existed for the magistrate to issue the search warrants.  As previously stated, the government charged the defendant with filing false tax returns and tax obstruction.  Addressing these charges, the search warrant states that "Accountant" prepared Schedules C for defendant's dental practice based on records provided to the accountant <u>relating to only one checking account</u>.  (Doc. 16-11, Aff. of Probable Cause at 14-15) (emphasis added).  Testimony regarding the affidavit further established that the defendant failed to inform the Accountant that he possessed multiple checking accounts.  (N.T. at 72).  The defendant also failed to inform the Accountant

18

that the defendant deposited gross receipts–revenue obtained from the defendant's dental practice–into these other checking accounts.  (N.T. at 72).

Revenue Agent Tom Sweeney, however, identified more that $550,000 in gross receipts from the defendant's dental practice that the defendant diverted into various personal accounts in 2008, 2009 and 2010.  (N.T. at 73-75).  Moreover, Accountant similarly prepared returns for defendant's various rental entities, which failed to include income the defendant diverted into other accounts.  (N.T. at 73-74).

Ergo, viewing the thirty-nine (39) page search warrant affidavit in its entirety, the court, and any reviewing magistrate judge, would quickly conclude that the defendant's alleged accounting practices–his commingling of income and expenses and failure to share all of his banking information with his Accountant–establish that probable cause existed to issue the search warrants.  Thus, the court will deny the defendant's motion to suppress all evidence seized from these warrants.

**Conclusion**

For the above-stated reasons, the court will deny the defendant's motion to dismiss the superseding indictment and motion to suppress all

evidence arising from the government's execution of five (5) search

warrants on April 28, 2016.  The defendant failed to demonstrate

substantial prejudice warranting dismissal of the superseding indictment.

The defendant has also failed to establish that the affidavit of probable

cause was defective.  An appropriate order follows.


**Date:**   03/22/2017                          **s/ James M. Munley**
                                                **JUDGE JAMES M. MUNLEY**
                                                **United States District Court**